## UNITED STATES v. FIVE CASES OF CHAMPAGNE.

(District Court, N. D. New York. June 23, 1913.)

FOOD (§ 5*)—IMITATION—"MISBRANDING"—CHAMPAGNE.

Food and Drugs Act June 30, 1906, c. 3915, § 8, 34 Stat. 770 (U. S. Comp. St. Supp. 1911, p. 1357), provides that for the purposes of the act an article shall be deemed to be misbranded, in the case of food (drink), if it be an imitation of or offered for sale under the distinctive name of another article, or if it be labeled or branded so as to deceive or mislead the purchaser, provided that an article of food which does not contain any added poisonous or deleterious ingredients shall not be deemed to be adulterated or misbranded; in case of mixtures or compounds, which may be now or from time to time hereafter known as articles of food, under "their own distinctive names and not an imitation of or offered for sale under the distinctive name of another article," if the name be accompanied on the label or brand with a statement of the place where the article has been made or produced, and in the case of articles labeled, branded, or tagged so as to plainly indicate that they are compounds, imitations, or blends, and the word "compound," "imitation," or "blend," as the case may be, is plainly stated on the package in which it is offered for sale. A wholesale liquor dealer in New York ordered four cases of champagne from S. & Co. in Illinois. The order was filled with cases, the outside of which were marked with designs to represent cases of champagne and contained bottles of the same shape and made to imitate an ordinary champagne bottle. The bottles were corked and dressed about the neck the same and in very close imitation of ordinary champagne bottles, having the same style of label and seal, both attached in the same manner, and on the label was the name "Special Gold Cabinet, Superior Quality," with a coat of arms on one side and the initials "H. H. S. & Co.," and on the other certain figures, but without the word "champagne." The contents of the bottles was a very cheap, ordinary, low grade of carbonated white wine. The boxes were also marked with the words "Extra Dry," when in fact the contents were not "extra dry." *Held* to constitute misrepresentation by misbranding, intended to deceive and defraud purchasers, within the act, and that the champagne was subject to forfeiture.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 1; Dec. Dig. § 5.*]

Libel by the United States for the condemnation of five cases of champagne, so called, for alleged violation of the Food and Drugs Act of June 30, 1906. Judgment of condemnation.

Thomas H. Dowd, Asst. U. S. Atty., of Cortland, N. Y.

James L. Green, of Watertown, N. Y., pro se.

RAY, District Judge. About March 15, 1913, James L. Green, a wholesale liquor dealer of Watertown, N. Y., ordered from Henry H. Shufeldt & Co., of Peoria, Ill., five cases of champagne, and said Shufeldt & Co. shipped and billed to him five cases of so-called champagne to fill the order, and same was shipped and transported and received in interstate commerce. Each case contained 24 bottles, and

each bottle holds about one pint of a liquid mixture which, on due examination and test, is found to consist of a very cheap, ordinary, low-grade carbonated white wine. It is not champagne in any sense of that word, but a low-grade, cheap white wine charged with gas. It is bottled and labeled in the following manner: The bottle itself is of the same shape and made in imitation of the ordinary champagne bottle. This bottle is corked and dressed about the neck the same as and in very close imitation in every way of the ordinary genuine champagne bottle, or bottle containing champagne; for instance, Mumm's Extra Dry. It has the same style of label and seal, both attached in the same manner. On the label is the name "Special Gold Cabinet, Superior Quality." There is also a coat of arms, and on one side initials "H. H. S. & Co.," and on the other "3015."

In short, the bottles containing the cheap carbonated wine are such a close imitation in form, or shape, dress, corking, and label, that the ordinary observer would and does easily mistake, accept, and use the imitation as a genuine bottle of imported champagne. This would and does happen with a large number of purchasers and users, and it may be said with the ordinary user, unless he gives the labels an inspection to determine whether it is the genuine champagne bottle. Evidently it is gotten up and dressed and labeled in this way to deceive the ordinary purchaser and user of champagne. The wooden boxes and markings and labels thereon in which shipped also closely imitate the boxes in which genuine champagne is shipped. This is such an imitation as would make a case of unfair competition in trade. The Food and Drugs Act of June 30, 1906, provides amongst other things:

"The term 'food,' as used herein, shall include all articles used for food, drink, confectionery, or condiment by man or other animals, whether simple, mixed, or compound." Section 6.

Section 2 prohibits the introduction into any state from another state of any article of food which is adulterated or misbranded within the meaning of the act. Section 8 provides:

"That for the purposes of this act an article shall also be deemed to be misbranded: * * * In the case of food: First. If it be *an imitation* of or offered for sale under the distinctive name of another article. Second. If it *be labeled or branded so as to deceive or mislead the purchaser*, or * * *. *Provided*, that an article of food (drink) which does not contain any added poisonous or deleterious ingredients shall not be deemed to be adulterated or misbranded in the following cases: First. In the case of mixtures or compounds which may be now or from time to time hereafter known as articles of food, under *their own distinctive names, and not an imitation of or offered for sale under the distinctive name of another article*, if the name be accompanied on the same label or brand with a statement of the place where said article has been manufactured or produced. * * * Second. In the case of articles labeled, branded, or tagged so as to plainly indicate that they are compounds, imitations, or blends, and the word 'compound,' 'imitation,' or 'blend,' as the case may be, is plainly stated on the package in which it is offered for sale."

In this case there is nothing to indicate to the purchaser that these bottles contain an imitation or that an imitation is intended.

Section 10 provides for the seizure and condemnation of adulterated or unbranded articles while being transported in interstate commerce,

or after transportation and while unsold or in original unbroken packages, which is this case.

This wine in question was and is an imitation of genuine imported champagne, and was and is so labeled and branded as to deceive and mislead both the purchaser and users into the belief that it is genuine champagne. Is it within the proviso or exception quoted? It contains no added poisonous or deleterious ingredient or ingredients. It was not and is not offered for sale under the distinctive name "champagne," as that word is not on either bottle, label, or package, if the statute means, by "offered for sale under the distinctive name of another article," that it must be so advertised, or bear on the package containing it the distinctive name of some other article. Even if it has a distinctive name "Special Gold Cabinet," still it is "an imitation of" and was actually "offered for sale" under the name "champagne," which is the distinctive name of another article; that is, "champagne" was ordered, and the seller sent this article as and for champagne, thus not only offering it for sale as champagne, but selling it as champagne. By his acts he represented it to be champagne. Hence this carbonated wine contained in these bottles and packages is not within the proviso or exception, and must be held to be *misbranded* and subject to seizure and condemnation.

It is not sufficient to remove an imitation and misbranded article from the condemnation of this law that it has a distinctive name applied to it, as the very language of the proviso requires that, if known under its own distinctive name (if it has one), it (the article) *must not be either an imitation of another article* or offered for sale under the distinctive name of *another article.* Here this carbonated wine contained in these bottles and cases was in fact offered for sale and sold under the distinctive name of champagne, another article, and, what is conclusive, was and is, in fact, an imitation of imported champagne. Again, can a *distinctive* name be given to an *imitation* article unless it be to distinguish one imitation from another? Clearly this cannot be done so as to bring a wine made and bottled and dressed in imitation of champagne, and sold and offered for sale as champagne, and delivered to fulfill orders for champagne, within the exception or proviso quoted, when it is so labeled or branded as to deceive and mislead the purchaser.

In this case it is sufficient to bring these cases of wine, the wine contained in these bottles, within the condemnation of the statute, and without the protection of the exception or proviso, that they are in fact "an imitation of another article," viz., genuine imported champagne, and are labeled and branded so as to deceive or mislead the purchaser, and are not labeled, branded, or tagged so as to plainly indicate that they are imitations, and the word "imitation" is not on the package. It must be borne in mind that in stating that this wine was actually offered for sale and sold under the distinctive name "champagne," I do not mean that the word "champagne" was on the bottles, labels, or packages, but that the purchaser ordered champagne, and expected to get champagne, and the seller knew this, and supplied this cheap, carbonated wine, put up in these bottles, dressed, ornamented,

and labeled in close imitation of champagne, and by these acts represented to the purchaser that he was selling and shipping to him genuine champagne. I think these facts bring the act of the seller within the language of the act, "offered for sale under the distinctive name of another article." Hence I hold that, within the meaning of this statute, this wine was not only offered for sale, but actually sold, "under the distinctive name of another article"; that is, genuine champagne.

Again, these bottles containing this wine—that is, the package containing it, both bottles and box—bore designs and devices thereon plainly intended to relate to the contents of such bottles, and indicate to the purchaser and user thereof the nature and character of the substance contained in such bottles. In addition to the marks and words and designs mentioned, there were the words "Extra Dry," indicating a grade of champagne, and these words were a plain misrepresentation and misstatement as to the character and quality of the contents, which were not "extra dry." These designs and devices very plainly said to a purchaser, "Champagne," and were intended by the seller to say to the purchaser, "This bottle contains extra dry champagne." These designs and devices were false and misleading. The design and devices and certain of the words on these bottles could relate to the substances contained therein only, and had but one purpose and meaning.

It was the purpose of Congress in enacting this, the "Food and Drugs Act, June 30, 1906," to put a stop to the transportation and sale in interstate commerce of adulterated and misbranded articles of food, drink, and drugs. It was intended to reach all forms of misrepresentation by misbranding, by the use of words, or by the use of designs or devices, pictures, etc., calculated to mislead and deceive, cheat, or defraud the purchasers. If A., in New York, orders of B., in Illinois, 1,000 one-pound packages of corn, and 1,000 packages are shipped and transported from the one state to the other in fulfillment of the order, and such packages have labels reading "Fine Illinois," with the picture thereon, or on the package itself, of an ear of corn, but the packages in fact contain sawdust only, is there or is there not an offer for sale under the distinctive name of another article, and is or is not the package so labeled or branded as to deceive or mislead the purchaser, and does or does not the package containing the sawdust or its label bear a design, or device, regarding the substance contained in such package, which is false or misleading in any particular? What does the picture of the ear of corn on the package say? And, in such case, is there or is there not a violation of the act in question? Having in view the evils to be remedied, the purpose of Congress, and the language of the act, it seems to me there can be but one answer.

A statute, if its wording will permit, is always to be construed so as to make effectual the intent of the law-making body in enacting it. In selling articles of food, including liquids for drinking, frauds on the public may be perpetrated in two ways: (1) By adulterating or artificially coloring it, etc., the article itself; and (2) by putting it in packages or receptacles so formed or labeled and dressed as to induce the

purchaser to take it as one article, when in fact it is another. Congress aimed at both modes of committing a fraud on the public.

There will be a judgment of condemnation.